UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/27/2024
```

-----------------------------------------------------------------X
                                                                 :
ANGELA REYNOLDS,                                                 :
                                                                 :
                                       Plaintiff,     :          1:21-cv-1132-GHW
                                                                 :
                    -against-                         :          MEMORANDUM OPINION &
                                                                 :                ORDER
AMTRAK, a/k/a NATIONAL RAILROAD                       :
PASSENGER CORPORATION,                                :
                                                                 :
                                       Defendant.     :
-----------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

On November 10, 2019, at about 2:20 a.m., Plaintiff Angela Reynolds stepped off a train in New York City's Penn Station. The nearest exit from the platform was an escalator. The escalator was stationary and dimly lit. Seeing others climbing the escalator ahead of her, Reynolds also began to walk up the escalator. After only two steps, Reynolds's foot caught on the edge of a tread. She fell, hitting her head. As a result, Reynolds filed this action against Defendant National Railroad Passenger Corporation—known colloquially as Amtrak—asserting that Amtrak acted negligently by failing to barricade the escalator or to warn her of the hazards of the escalator.

Amtrak filed a motion for summary judgment on Reynolds's claims. While a stationary escalator, on its own, does not ordinarily give rise to premises liability, the specific circumstances here—especially the poor lighting conditions at the time of Reynolds's fall—raise questions of fact as to whether Reynolds can hold Amtrak liable for a breach of its duty to maintain the premises in a reasonably safe condition. However, because the evidence fails to show that Amtrak knew of, should have known of, or created any hazardous condition that resulted in Plaintiff's injury, Plaintiff's negligence claim fails. Accordingly, Amtrak's motion for summary judgment is GRANTED.

I.    **BACKGROUND**

A.    **Facts[1]**

1.    **Plaintiff's Fall**

On November 10, 2019, at about 2:20 a.m., Angela Reynolds disembarked from a train that had just arrived at New York's Penn Station ("Penn Station").  Dkt. No. 124 ("Pl. 56.1 Statement") ¶ 2.  The closest visible exit from the platform was an escalator heading upstairs, labeled "8BW" (the "8BW Escalator").  Dkt. No. 118 ("Def. 56.1 Statement") ¶ 18; Pl. 56.1 Statement ¶ 3; *see also* Dkt. No. 130-4 (photograph of escalator with "Escalator Unit 8BW" sign).

As Reynolds could see, the 8BW Escalator was not moving.  Pl. 56.1 Statement ¶ 5.  The escalator had neither barricades nor any sign indicating that it should not be used while stationary.  *Id.* ¶ 6.  Reynolds did not know how long the escalator had been stationary.  Def. 56.1 Statement ¶ 14.

Reynolds saw that other people were walking up the escalator.  Dkt. No. 117-4 ("Reynolds Dep.") at 74:3–7.  The lighting in the immediate area around the escalator was dim.[2]  *Id.* at 70:7–25.  She could see the steps of the escalators "somewhat," but not clearly.  *Id.* at 70:12–18.

Reynolds began to walk up the 8BW Escalator.  As she did, she could see three other people climbing up the escalator ahead of her:  two nearly at the top of the escalator and one approximately eight steps ahead.  Def. 56.1 Statement ¶ 7; Reynolds Dep. at 73:11–74:2.

As with any escalator, most of the steps of the 8BW Escalator are the same height, but the first few steps at the bottom of the escalator gradually increase in height until the riser reaches the

---

[1] The facts are largely drawn from the parties' Local Civil Rule 56.1 statements and other submissions in connection with the Motion.  The facts are either undisputed or viewed "in the light most favorable to the party opposing summary judgment"—Plaintiff—while "drawing all reasonable inferences in [his] favor."  *M.A. ex rel. H.R. v. Rockland Cnty. Dep't of Health*, 53 F.4th 29, 35 (2d Cir. 2022) (quoting *Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022)).

[2] The parties dispute this fact.  For the purposes of this motion, the Court accepts Plaintiff's assertion that the lighting was relatively poor.

full, standard height.  *See* Reynolds Dep. at 83:4–85:18; Dkt. No. 130-4 (photograph of 9BW Escalator).  Two steps into her climb up the 8BW Escalator, Reynolds's foot caught on the edge of a tread.[3]  Def. 56.1 Statement ¶ 12.  She had not yet reached the point where the escalator's risers were at the standard height.  Reynolds Dep. at 83:4–85:18 ("I can't fully describe to you the height of each -- of each step, but I never got to where it was standard.").  She fell forward and hit her head on the steps of the escalator.  Def. 56.1 Statement ¶ 12.  She began to bleed heavily.  Reynolds Dep. at 75:3–20.

Reynolds was taken to an emergency room, where she was diagnosed with a fractured forehead, fractured nose, and a sprained neck.  Pl. 56.1 Statement ¶ 16.[4]  She also received stitches on her forehead and around her eye for lacerations.  *Id.* ¶¶ 16–17.[5]  Reynolds continues to suffer from various physical and mental health issues as a result of the fall.  *Id.*

## 2.    Amtrak's Escalator Maintenance Practices and Policies

As a matter of general practice, two or three Amtrak employees conduct visual safety checks of the escalators at Penn Station every hour to an hour and a half.  Def. 56.1 Statement ¶¶ 19–20; *see also* Dkt. No. 117-5 ("Sahadeo Dep.") at 15:12–16:9; Dkt. Nos. 117-6, 117-7 ("Hall Dep.") at 79:17–80:7.  As part of the safety checks, the Amtrak employees make sure that "there is proper lighting," meaning that the red and green status lights on each escalator, the lights on the sides of each escalator, and the lighting in the general surrounding area are working, "so that it has enough lighting for everyone."  *See* Sahadeo Dep. at 16:2–9, 17:2–5, 32:3–18.

---

[3] Reynolds's medical records from December 4, 2019, approximately a month after her accident, report that she "[f]ell on an escal[at]or when heel caught in the grooves of a step . . . [and the m]omentum of climbing up stairs with heel stuck in stair--caused her to pitch forward--hitting her head into the stair."  Dkt. No. 117-11.  Viewing the facts in the light most favorable to Plaintiff, however, the Court takes Plaintiff's testimony as fact for the purposes of this analysis.

[4] Plaintiff appears to have inadvertently mislabeled her paragraphs, such that there are two sets of ¶¶ 14, 15, and 16.  This citation refers to the second ¶ 16.

[5] This citation refers to the second ¶ 16 and ¶ 17.

If there are no issues, the Amtrak employees generally report the results of their safety checks back to the supervisor orally. *Id.* at 17:6–20. If the employees find an escalator that is out of order and cannot be immediately restarted, they barricade the escalator. Hall Dep. at 71:5–72:9, 80:14–23. As a general practice, Amtrak employees will barricade an escalator if it is not running. Sahadeo Dep. at 83:12–84:6. If the employees find that any of the lights near an escalator are not working, the escalator is also usually turned off and barricaded. *Id.* at 33:3–17.

Amtrak creates "conveyance reports," which detail the status of the escalators at Penn Station during a given work shift. Hall Dep. at 31:10–41:2; *see, e.g.*, Dkt. No. 117-12 (November 9, 2019 conveyance report). Drafted by the supervising foreperson in charge of the work shift, the conveyance reports are used to note any issues found or work performed during the shift. Sahadeo Dep. at 35:22–36:14. The conveyance reports also indicate the status of each escalator in columns labeled "Operational," "Operational w. Issue," and "Out of Service." *See* Dkt. No. 117-12. An "x" (or sometimes "v") mark in the "Operational" column means that the escalator was "operating as it should operate." *See* Hall Dep. at 32:13–24, 33:6–12; Sahadeo Dep. at 40:16–41:16. Details such as the replacement of a lightbulb are not generally recorded. *See* Hall Dep. at 60:17–22.

The escalators at Penn Station can be turned off by pressing an emergency stop button found on each escalator. Dkt. No. 117-8 ("Fullerton Dep.") at 27:12–23; Hall Dep. at 18:10–23; *see also* Dkt. No. 130-4 (photograph of buttons, keyholes, and warning labels on the 8BW Escalator). This requires the use of a key.[6] Escalators can also stop on their own as a result of a mechanical

---

[6] The parties dispute whether the use of the emergency stop button requires a key. Plaintiff points to the testimony of Officer Fullerton, an MTA police officer assigned to patrol Penn Station at the time of Plaintiff's accident, who testified that stopping the escalator requires the use of a key. Fullerton Dep. at 27:12–23 ("[H]ow is it that escalators are turned off and on . . . ?" / "There is an emergency button . . . to stop it or to start it. It's used with a key and a button combination at the same time."); *see also id.* 39:10–40:15 (testifying that the transparent cover for the emergency stop button requires a key to open, in order to stop people from activating the button). This is contradicted by the testimony of Mr. Hall, Amtrak's assistant division engineer for Penn Station, who testified that members of the public can—and often do—stop an escalator simply by lifting up a cover and pressing the emergency stop button, without a key. Hall

failure: for example, on November 3, 2019, the 8BW Escalator was reported to be "not running" because a comb plate, which is found at the top and bottom of an escalator, had a loose screw underneath the comb plate, causing the escalator to shut down automatically. *See* Hall Dep. at 35:3–6, 111:3–112:5; *see also* Dkt. No. 130-2 (November 3, 2019 report noting "Call for 8BW not running. . . . Found a screw under comb plate loose . . . ."). The 8BW Escalator was placed back into service. *See* Dkt. No. 130-2.

The Amtrak work shift immediately preceding Plaintiff's accident spanned the period between 3:00 p.m. and 11:00 p.m. on November 9, 2019. *See* Dkt. No. 117-12 (conveyance report); Hall Dep. at 33:21–34:3.[7] The conveyance report for that shift states that a comb plate on the 8BW Escalator was replaced and reset. Dkt. No. 117-12; Hall Dep. at 34:23–35:3. Replacing a comb plate is a frequent and simple repair, and it requires that the escalator be stopped during the replacement. Hall Dep. at 35:13–16, 36:18–24. The conveyance report for this shift contains a "v" mark in the "Operational" column for the 8BW Escalator. Dkt. No. 117-12; *see* Hall Dep. at 33:6–12, 33:21–34:13.[8]

---

Dep. at 18:10–23 ("[T]he stopping of the escalator, is that something that can be done by civilians . . . ? / "Yeah, actually, it's frequent by civilians . . . . If someone's running for a train and they see that the escalator to the platform . . . is going in the wrong direction . . . they will hit the Stop button and walk down it."). The Court takes Officer Fullerton's testimony as true for the purposes of resolving Defendant's summary judgment motion, as the Court cannot make credibility determinations at this stage and must draw all reasonable factual inferences in Plaintiff's favor.

[7] There is no evidence in the record before the Court of the conveyance report of the subsequent shift, during which Plaintiff's accident took place.

[8] Plaintiff asserts that "no notation of the escalator to be in operation were [*sic*] ever documented." Pl. 56.1 Statement at 10 (objecting to Def. 56.1 Statement ¶ 23). The conveyance report clearly states otherwise. *See* Dkt. No. 117-12. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

B.    **Procedural History**

Reynolds filed this action on February 8, 2021, asserting claims of negligence and negligent hiring and supervision against Amtrak, Long Island Rail Road ("LIRR"), and the Metropolitan Transit Authority (the "MTA").  Dkt. No. 1 ¶¶ 50–60 ("Compl.").

This case was referred to Magistrate Judge Jennifer E. Willis for general pretrial matters. Dkt. No. 36.  The parties engaged in nearly two and a half years of discovery.  Dkt. Nos. 21, 28, 33, 44, 55, 62, 66, 71, 79 (orders granting extensions of discovery deadlines); Dkt. No. 86 (order denying extension of discovery deadline).  Following the stipulated dismissals of Plaintiff's claims against Defendants LIRR and the MTA, only Amtrak remains as a Defendant in this case.  *See* Dkt. No. 110 (stipulation of dismissal).

On February 9, 2024, Amtrak moved for summary judgment.  Dkt. No. 116 (notice of motion); Dkt. No. 119 ("Mem.").  In its motion, Amtrak argues that it could not have breached a duty of care to Plaintiff because, as a number of courts have held, a stationary escalator is not a reasonably foreseeable hazard and is open and obvious.  Mem. at 6–9.  Amtrak also argues that its failure to barricade the 8BW Escalator did not contravene industry standards and that the industry standards regarding barricading an escalator are not incorporated into the New York City Building Code.[9]  *Id.* at 9–11.  Amtrak also asserts there is no evidence to show it had actual or constructive notice that the 8BW Escalator was stationary at the time of Plaintiff's accident.  *Id.* at 11–13. Relying on conveyance reports and the testimony of its employees, Amtrak notes that it conducts regular safety inspections of the escalators at Penn Station and that the 8BW Escalator had been

---

[9] Neither party raises a negligence *per se* argument—that is, whether Amtrak can be held liable for negligence *per se* based on the violation of the New York City Building Code.  This is presumably because the violation of a municipal ordinance does not give rise to negligence *per se* and can only be evidence of negligence.  *Elliott v. City of New York*, 95 N.Y.2d 730, 734 (2001) ("As a rule, violation of a State statute that imposes a specific duty constitutes negligence per se, or may even create absolute liability.  By contrast, violation of a municipal ordinance constitutes only evidence of negligence." (citation omitted)).

serviced and reported to be fully operational during the shift immediately preceding Plaintiff's accident.  *Id.* at 12.  Amtrak also contends that Plaintiff cannot proceed to trial based on the doctrine of *res ipsa loquitur* because Plaintiff cannot show that Amtrak had exclusive control over the 8BW Escalator, a publicly accessible escalator.  *Id.* at 14–15.

Plaintiff filed her opposition on April 9, 2024.  Dkt. No. 122 ("Opp.").  Plaintiff contends that the hazard that caused her accident was not merely the stationary escalator alone but a combination of factors—namely, that the bottom steps of a stationary escalator were uneven in height and poorly lit.  Opp. at 5–6.[10]  She asserts that this combination resulted in a hazard that was obscured and therefore not open and obvious.  *Id.*  She also argues that Amtrak's failure to barricade the 8BW Escalator was negligent because it violated industry standards and the New York City Building Code.  *Id.* at 7–12.[11]  As for whether Amtrak had notice, Plaintiff asserts that Amtrak's awareness that travelers at Penn Station walk up and down stationary escalators and that Amtrak's failure to ensure that such escalators were barricaded creates a triable issue of fact as to whether Amtrak was on constructive notice of the stationary escalator on which Plaintiff fell.  *Id.* at 15, 18–20.  Plaintiff also argues that the evidence shows that Amtrak had control over the 8BW Escalator and must have created the dangerous conditions of the escalator at the time of her

---

[10] Specifically, Plaintiff contends that the hazardous conditions leading to her injury were that:  "[t]he steps were uneven, the lighting was poor, there was no barricade in place[,] and Ms. Reynolds['s] foot became caught on one of the escalator steps."  Opp. at 5.  Neither the absence of a barricade nor that Ms. Reynolds's foot was caught on a step is a dangerous condition—the former is what Plaintiff asserts to be Amtrak's breach of duty, and the latter is a description of what happened.

[11] Plaintiff also complains of purported gaps in the discovery, including redactions applied to documents that Amtrak produced, and Plaintiff argues that these purported deficiencies in the discovery create a disputed issue of material fact.  *See, e.g.*, Opp. at 8, 14.  Plaintiff's argument that unproduced records or redacted portions might say something material to the parties' claims is mere speculation, not a basis for finding a disputed material fact.  *See Robinson, Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) ("[A] plaintiff may not survive summary judgment merely by conjuring a hypothetical issue of material fact."); *see also In re Nissan Litig.*, No. 17-cv-729 (KBF), 2018 WL 4328833, at *8 (S.D.N.Y. Sept. 11, 2018) ("Plaintiffs' and third-party defendants' speculation [that redactions hide improprieties] . . . is insufficient to create a genuine issue of material fact . . . .").

accident. *Id.* at 18–19.  She contends that the evidence also demonstrates Amtrak had "exclusive control" of the 8BW Escalator, for the purposes of the doctrine of *res ipsa loquitur*. *Id.* at 22–23.

Briefing on Amtrak's motion was completed on May 6, 2024, with the filing of Amtrak's reply.  Dkt. No. 129 ("Reply").

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))).  A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323).  To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."

*Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586 (citations omitted), and she "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted); *see also Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted).

## III.    DISCUSSION

### A.    Negligence

Plaintiff's negligence claim is governed by New York law. "Under New York law, a tort plaintiff seeking to prove a defendant's negligence must show:  '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021) (quoting *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981)). "While the definition, and hence the existence, of a duty relationship is usually a question for the court, whether the defendant's conduct breached that duty is most often a jury question." *Id.* at 79.

Under New York law, two related but distinct duties of a landowner are implicated in a trip-and-fall case. "A landowner owes the public a duty to maintain its property in a reasonably safe condition under the existing circumstances . . . ." *Zubillaga v. Findlay Teller Housing Dev. Fund Corp.*, 153 N.Y.S.3d 14, 18 (1st Dep't 2021). This duty "may include the duty to warn persons reasonably expected to be on the property of known dangers." *Id.* While related, "[t]he duty to maintain premises in a reasonably safe condition is analytically distinct from the duty to warn . . . ." *Westbrook v. WR Activities-Cabrera Mkts.*, 773 N.Y.S.2d 38, 42 (1st Dep't 2004) (quoting *Cohen v. Shopwell*, 765 N.Y.S.2d 40, 42 (1st Dep't 2003)).

Whether a condition is "open and obvious" has an impact on the scope of a landowner's duty. "[A] landowner has no duty to warn of an open and obvious danger." *Tagle v. Jakob*, 97 N.Y.2d 165, 169 (2001). "[P]roof that a dangerous condition is open and obvious does not preclude a finding of liability against a landowner for the failure to maintain the property in a safe condition[, though it] is relevant to the issue of the plaintiff's comparative negligence." *Cupo v. Karfunkel*, 767 N.Y.S.2d 40, 43 (2d Dep't 2003); *accord Borley*, 22 F.4th at 82; *Westbrook*, 773 N.Y.S.2d at 43.

A court may "grant[] summary judgment to a landowner on the ground that the condition complained of by the plaintiff was both open and obvious *and, as a matter of law, was not inherently dangerous*." *Cupo*, 767 N.Y.S.2d at 43 (emphasis in original). "In such circumstances, the condition which caused the accident cannot fairly be attributed to any negligent maintenance of the property." *Id.*; *see also* 85 N.Y. Jur. 2d Premises Liability § 57 ("[W]here a condition that causes an accident is both open and obvious and, as a matter of law, not inherently dangerous, the condition which caused the accident cannot fairly be attributed to any negligent maintenance of the property.").

"[T]he question of whether a condition is open and obvious is generally a jury question, and a court should only determine that a risk was open and obvious as a matter of law when the facts

compel such a conclusion." *Borley*, 22 F.4th at 81 (internal quotation marks and citation omitted).

Whether a condition is not inherently dangerous is also "a highly fact-specific question, and hence

usually one for the jury." *Id.*; *see also Clark v. AMF Bowling Ctrs., Inc.*, 921 N.Y.S.2d 273, 274 (2d

Dep't 2011) ("Whether a dangerous condition exists on real property so as to create liability on the

part of the landowner depends on the peculiar facts and circumstances of each case and is generally

a question of fact for the jury." (internal quotation marks and citation omitted)).  The Court

examines the two duties—the duty to maintain the premises in a reasonably safe condition and the

duty to warn—in turn.

### 1.    Amtrak's Duty to Maintain the Premises

Because there is a triable issue of fact as to whether the 8BW Escalator was both open and

obvious and not inherently dangerous, Amtrak is not entitled to summary judgment that it did not

breach a duty to maintain reasonably safe premises at Penn Station.[12]

The Court cannot conclude, as a matter of law, that the 8BW Escalator was an open and

obvious hazard at the time of Plaintiff's accident.  "For a condition to be open and obvious as a

matter of law, it must be one that could not be overlooked by any observer reasonably using his or

her ordinary senses." *Garrido v. City of New York*, 779 N.Y.S.2d 208, 209 (1st Dep't 2004).  Plaintiff

testified that the lighting around the escalator was "very dim," and that she could only "somewhat"

see the steps of the 8BW Escalator.  *See* Reynolds Dep. at 70:7–25.  She stated that she only made it

about two steps up the escalator, where the height of each riser had not yet reached the standard full

height, before her foot caught on an edge and she fell.  *Id.* at 74:8–17, 83:4–18.  A reasonable jury

---

[12] While the parties' briefing and Rule 56.1 statements do not clarify Amtrak's relationship to Penn Station, the Court assumes for the purposes of this opinion that Amtrak is responsible for the premises at Penn Station.  *See* Compl. ¶ 15 (alleging Amtrak to be the owner of the premises at Penn Station).

could conclude that the dimly lit, uneven steps of the stationary 8BW Escalator was a hazard that was not open and obvious.

Amtrak's argument that courts have found stationary escalators to be open and obvious misunderstands the nature of the hazard at issue. As some New York courts have pointed out, a stationary escalator, including the gradually increasing height of the first few steps, is ordinarily an open and obvious condition.[13] *See, e.g., Schurr v. Port Auth. of New York & New Jersey*, 763 N.Y.S.2d 304, 304 (1st Dep't 2003). But "[a] condition that is ordinarily apparent to a person making reasonable use of his or her senses may be rendered a trap for the unwary where the condition is obscured . . . ." *Acevedo v. N.Y.C. Transit Auth.*, 947 N.Y.S.2d 599, 600 (2d Dep't 2012) (citing *Shah v. Mercy Med. Ctr.*, 898 N.Y.S.2d 589, 590 (2d Dep't 2010)). A condition can be obscured by poor lighting: for example, inadequate lighting over stairs can hide conditions that might otherwise be open and obvious, such as wet substances, *see Soto v. 2780 Realty Co., LLC*, 980 N.Y.S.2d 93, 94–95 (1st Dep't 2014), or objects left on a stairwell, *see Nelson v. Sweet Assocs., Inc.*, 788 N.Y.S.2d 705, 706 (3d Dep't 2005). Here, drawing all reasonable inferences in Plaintiff's favor, Plaintiff was faced with the uneven treads of a stationary escalator that were poorly lit and, as a result, hard to see clearly. A

---

[13] The parties focus much of their briefing on the 8BW Escalator being stationary. A stationary escalator ordinarily does not give rise to premises liability because it is not a reasonably foreseeable hazard. The scope of a landowner's "duty of reasonable care under the circumstances to maintain their property in a safe condition . . . varies with the foreseeability of the possible harm." *Tagle*, 97 N.Y.2d at 168; *see also Robinson v. Gov't of Malaysia*, 269 F.3d 13, 145 (2d Cir. 2001) (noting a landowner's "duty of care extends only to reasonably foreseeable accidents"); *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 117 (2d Cir. 2000) ("Or, as famously stated by Chief Judge Cardozo, '[t]he risk reasonably to be perceived defines the duty to be obeyed.'" (alteration in original) (quoting *Palsgraf v. Long Island R.R.,* 248 N.Y. 339, 344 (1928))). As other courts in New York have found, an escalator that is not running—as long it is otherwise free of defect—is not a reasonably foreseeable hazard. *See, e.g., Adamo v. Nat'l R.R. Passenger Corp.*, 897 N.Y.S.2d 85, 87 (1st Dep't 2010) ("The temporarily stationary stairway [(i.e., escalator)] did not present a reasonably foreseeable hazard . . . ."); *Schurr v. Port Auth. of New York & New Jersey*, 763 N.Y.S.2d 304, 304 (1st Dep't 2003) (finding no evidence that "the stopped escalator posed a reasonably foreseeable hazard to those who, like plaintiff, used it in the manner of a staircase to reach the next floor"); *see also Ramos v. Sears/Kmart*, No. 08 Civ. 4969 (DF), 2010 WL 3911487, at *5 (S.D.N.Y. Sept. 13, 2010) (citing *Adamo* and *Schurr*).

reasonable jury could conclude that the uneven steps of the 8BW Escalator were obscured, rather than open and obvious.

The Court also cannot conclude, as a matter of law, that the 8BW Escalator at the time of Plaintiff's accident was not inherently dangerous. As Plaintiff testified, the escalator was stationary, with uneven steps that she had to walk up but were not clearly visible due to dim lighting. A jury could reasonably find that the 8BW Escalator was not adequately illuminated to allow Plaintiff to see the uneven first steps of the escalator as she climbed it, and that this created a dangerous condition for which Amtrak was responsible. *See, e.g.*, *Haibi v. 790 Riverside Drive Owners, Inc.*, 64 N.Y.S.3d 22, 24–25 (1st Dep't 2017) ("[I]nadequate lighting itself may constitute a dangerous condition where the inadequacy of lighting renders the appearance of premises deceptive."); *see also Wilson v. Proctors Theater & Arts Ctr. & Theater of Schenectady, Inc.*, 636 N.Y.S.2d 456, 458–59 (3d Dep't 1996) (finding issue of fact as to whether dimly lit stairway was unreasonably dangerous); *Browne v. Marriott Int'l Hotels, Inc.*, No. 07-CV-2228 NGG, 2010 WL 3602844, at *3 (E.D.N.Y. Sept. 7, 2010) ("[Defendant's] complete inattention to the light fixture created a risk that guests . . . could injure themselves on the unlit stairs. The court is unwilling to conclude, as a matter of law, that this was not an unreasonably dangerous condition.").

Accordingly, there are triable issues of fact as to whether the condition of the 8BW Escalator was open and obvious and not inherently dangerous at the time of Plaintiff's accident. Amtrak is not entitled to summary judgment that it did not breach its duty to maintain the premises at Penn Station in reasonably safe conditions.

### 2.    Amtrak's Duty to Warn

The Court also cannot conclude, at this stage, that Amtrak did not breach a duty to warn Plaintiff. As mentioned, "a landowner has no duty to warn of an open and obvious danger." *Tagle*,

97 N.Y.2d at 169.  For the same reasons above, whether any purportedly dangerous condition of the 8BW Escalator was open and obvious is a triable issue of fact and cannot be determined as a matter of law at this stage.  Accordingly, Amtrak is not entitled to summary judgment on whether it breached its duty to warn Plaintiff of dangers.

### 3.    Amtrak's Awareness of a Dangerous Condition

Plaintiff cannot show that Amtrak breached any duty of care because no reasonable jury could conclude that Amtrak knew of, should have known of, or created the inadequate lighting conditions over the 8BW Escalator at the time of Plaintiff's accident.

"In slip-and-fall cases, . . . to show a 'breach of duty,' a plaintiff must show that a defendant either created the dangerous condition or had actual or constructive notice of the condition and its dangerousness."  *Borley*, 22 F.4th at 79; *accord* 85 N.Y. Jur. 2d Premises Liability § 176.  Generally, "the question of whether a particular defendant showed sufficient care [is] a question for the jury— that is, a question not suited for summary judgment."  *Borley*, 22 F.4th at 79; *see also Liriano v. Hobart Corp.*, 170 F.3d 264, 268 (2d Cir. 1999) ("The courts of New York have . . . ruled that judges should be very wary of taking the issue of liability away from juries, even in situations where the relevant dangers might seem obvious, and especially when the cases in question turn on particularized facts.").  Summary judgment is nevertheless appropriate where the record fails to establish a genuine issue of material fact with respect to creation, actual notice, or constructive notice.  *See, e.g., Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. 2008) (summary order) (affirming grant of summary judgment in slip-and-fall case based on lack of triable issue of fact as to creation, actual notice, or constructive notice); *see also Borley*, 22 F.4th at 80 (distinguishing from other slip-and-fall cases that granted summary judgment in favor of defendant).

14

i.        **Actual Notice of the Dangerous Condition**

A reasonable jury cannot find that Amtrak actually knew either that the 8BW Escalator was stationary or that it was dimly lit.  Plaintiff does not cite complaints, reports, testimony, or any other evidence indicating that Amtrak had knowledge of issues related to the 8BW Escalator prior to Plaintiff's accident.  Instead, the evidence shows the opposite:  the conveyance report for the shift immediately prior to Plaintiff's accident states that the 8BW Escalator had been repaired, and it was marked as "Operational."  Dkt. No. 117-12.  The "Operational" notation means that the escalator was "operating as it should operate," Hall Dep. at 32:13–24, in that it was running without any issues.  *See also* Sahadeo Dep. at 79:7–18 ("[I]f an escalator is working, it shouldn't be shut off.").[14] There is no evidence that Amtrak employees discovered any dangerous condition in the period leading up to Plaintiff's accident.[15]

ii.   **Constructive Notice of the Dangerous Condition**

There is also no triable issue of fact as to whether Amtrak should have known of the purportedly dangerous condition of the 8BW Escalator.  "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it."  *Gordon v. Am. Museum of Natural History*, 67 N.Y.2d 836, 837 (1986).  Constructive notice can be "demonstrated by evidence of a recurring dangerous condition in the area of the accident that was routinely left unaddressed by the

---

[14] Plaintiff argues that it is possible that the "Operational" notation was a mistake because the fact that the 8BW Escalator was repaired during that shift arguably means that it should have been marked as "Operational with Issues." Opp. at 8–9.  Even assuming the 8BW Escalator was mistakenly marked as "Operational" instead of "Operational with Issues," however, Plaintiff fails to point to any evidence showing that the 8BW Escalator was *not* operational at this time.
[15] Indeed, that the 8BW Escalator was not barricaded at the time of Plaintiff's accident suggests that Amtrak did not know that it was stationary:  Amtrak barricades an escalator if they find one that is stationary.  Sahadeo Dep. at 83:12–84:6 ("[I]f an escalator is not running, then whoever is in charge at that period . . . would have to go barricade the escalator and find out why it's not running.").  At the time of Plaintiff's accident, however, the 8BW Escalator was stationary but not barricaded.  Pl. 56.1 Statement ¶¶ 5–6.

defendant." *Borley*, 22 F.4th at 79 (quoting *Mullin v. 100 Church LLC*, 784 N.Y.S.2d 545, 546 (1st Dep't 2004)). Here, there is no evidence of either.

Even if the purportedly dangerous condition of the 8BW Escalator was visible and apparent, there is no evidence that such a condition existed for any meaningful period of time to allow Amtrak to find and fix the issues. Plaintiff testified that she did not know how long the 8BW Escalator had been stationary at the time of her accident. Def. 56.1 Statement ¶ 14; Reynolds Dep. at 69:18–23. The only evidence in the record regarding the 8BW Escalator's status leading up to Plaintiff's accident is that it was operational just hours before, *see* Dkt. No. 117-12, and that routine safety checks were completed at one- to one-and-a-half-hour intervals, *see* Def. 56.1 Statement ¶¶ 19–20; Sahadeo Dep. at 15:12–16:9; Hall Dep. at 79:17–80:7. These safety checks included checking to see if the escalator was not working or if the lighting in the area was inadequate. Sahadeo Dep. at 16:2–9, 17:2–5, 32:3–18. There is no indication that these checks were not performed as usual on the 8BW Escalator on the night of Plaintiff's accident.[16] Plaintiff identifies no testimony, records, security footage, or other evidence otherwise indicating how long the 8BW Escalator had been stationary or dimly lit leading up to her accident. In short, no evidence presented by Plaintiff here permits a reasonable jury to conclude that dangerous conditions on the 8BW Escalator existed for any particular period of time.

There is also no evidence that a dimly lit, stationary 8BW Escalator was a recurring issue that went unaddressed. *See Borley*, 22 F.4th at 79. Again, the evidence only indicates that Amtrak

---

[16] Plaintiff objects to the purported failure of Amtrak to produce relevant documents, including the conveyance report covering the time of Plaintiff's accident, and argues that the absence of evidence that the 8BW Escalator was in fact inspected as a part of these routine safety checks creates a triable issue of fact. *See* Opp. at 14, 16. "[P]laintiffs may not defeat a motion for summary judgment by arguing that the defendants acted improperly during discovery because the plaintiffs have failed to make any motions to compel the discovery they sought and failed to obtain any sanctions rulings in the course of discovery." *Valenti v. Penn Mut. Life Ins. Co.*, 850 F. Supp. 2d 445, 452 n.1 (S.D.N.Y. 2012). Plaintiff, as the party ultimately bearing the burden of proof at trial, must show more than an absence of evidence and mere speculation for the Court to allow an issue to go to trial. *See id.* at 454.

conducted routine checks and that any issues found with the 8BW Escalator were resolved. Multiple witnesses testified that Amtrak employees conduct routine safety checks of the Penn Station escalators every hour to hour-and-a-half to address any issues found during the checks. *See* Sahadeo Dep. at 15:12–16:9; Hall Dep. at 79:17–80:7. The record also shows that, leading up to Plaintiff's accident, Amtrak employees found and fixed a loose screw under the 8BW Escalator's comb plate a week prior to Plaintiff's accident, *see* Dkt. No. 130-2, and replaced a comb plate the evening before, *see* Dkt. No. 117-2. There is no evidence that the 8BW Escalator experienced recurring issues, much less any that went unaddressed. *Cf. Borley*, 22 F.4th at 80 (noting absence of "any meaningful procedure that would have reliably and promptly notified employees" of a known, recurring hazard).

The only evidence Plaintiff relies on is testimony of witnesses who observed stationary escalators at Penn Station, but this does not permit a reasonable inference of how frequently such issues occurred or that the issue was specific to the 8BW Escalator. "[A] 'general awareness' that a [potential] dangerous condition may be present is legally insufficient to constitute notice of the particular condition that caused plaintiff's fall." *Piacquadio v. Recine Realty Corp.*, 84 N.Y.2d 967, 969 (1994); *accord Gordon*, 67 N.Y.2d at 838. A general awareness that the escalators at Penn Station sometimes are not working cannot establish constructive notice of the specific conditions of the 8BW Escalator in the early hours of November 10, 2019. Nor do these observations of stationary escalators suggest that they were dangerous.

There is no evidence that could permit a reasonable jury to conclude that the purportedly dangerous conditions of the 8BW Escalator "exist[ed] for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon*, 67 N.Y.2d at 837.

17

Accordingly, there is no triable issue of fact as to whether Amtrak had constructive notice of the purported dangerous conditions of the 8BW Escalator.

### iii. Creation of the Dangerous Condition

No reasonable jury could find that Amtrak created the purportedly dangerous conditions that resulted in Plaintiff's injury. "Finding that the defendant created the dangerous condition requires 'some affirmative act' on the part of the defendant." *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004) (quoting *Fink v. Bd. of Educ. of City of N.Y.*, 498 N.Y.S.2d 440, 441 (2d Dep't 1986)); *accord Feder v. Target Stores*, 15 F. Supp. 3d 253, 256 (E.D.N.Y. 2014).

There is no evidence that Amtrak employees stopped the 8BW Escalator, dimmed the lighting in the area, or took any other action to create the conditions that resulted in Plaintiff's injury. No witness testimony or record identifies, for example, what caused the 8BW Escalator to be stationary at the time of Plaintiff's accident, much less that it was Amtrak that stopped the escalator. Indeed, the Court is not aware of anything in the record indicating that Amtrak employees have *ever* turned off an escalator, except to repair it.

The evidence shows efforts by Amtrak to avoid purported hazards such as the one at issue here. A conveyance report shows that Amtrak serviced the 8BW Escalator the evening before Plaintiff's accident, leaving it operational; and witnesses testified that Amtrak employees conducted regular visual safety checks of the escalator for both lighting and mechanical issues every hour to hour and a half in the meantime. Dkt. No. 117-12 (November 9, 2019 conveyance report noting the repair and marking the 8BW Escalator as "operational"); Sahadeo Dep. at 15:12–16:9, 17:2–5, 32:3–18. And, as one of Amtrak's supervising foremen testified, Amtrak has no reason to turn off an escalator if there are no known issues with it. *See* Sahadeo Dep. at 79:7–18.

To support her position, Plaintiff relies on speculation. Plaintiff contends that Amtrak employees could have manually shut down the 8BW Escalator—and walked away without barricading it. "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks and citations omitted). "A plaintiff cannot survive summary judgment by offering mere speculation and conjecture regarding how a defendant may have created a particular hazard, particularly where there are several possible causes of an injury, for one or more of which the defendant was not responsible, and it is just as reasonable and probable that the injury was the result of one cause as the other." *Yates v. Costco Wholesale Corp.*, No. 19-cv-4023 (ENV) (RLM), 2021 WL 9409159, at *6 (E.D.N.Y. June 30, 2021) (internal quotation marks and citation omitted). In short, "Plaintiff's burden at this stage of the proceedings is not merely to proffer a plausible theory, but to present evidence from which a reasonable jury could draw the inference that Defendant created the hazardous condition." *Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 319 (E.D.N.Y. 2014).

The only evidence Plaintiff points to in support of her theory is a witness's testimony that the only way to manually shut off an escalator is by using a key. Opp. at 19; *see* Fullerton Dep. at 27:12–23.[17] But a manual shut down is only one possible cause for a stationary escalator—for, as the record shows, the 8BW Escalator can also shut down involuntarily due to a malfunction or obstruction. *See* Dkt. No. 130-2 (November 3, 2019 conveyance report noting 8BW Escalator not running due to loose screw found under comb plate); Hall Dep. 111:3–112:5. Plaintiff cites no

---

[17] There is conflicting testimony as to whether the use of the escalator stop button requires the use of a key or can be pressed by any member of the public. *Compare* Fullerton Dep. at 27:12–23 (testimony of police officer assigned to Penn Station), *with* Hall Dep. at 18:10–23 (testimony of Assistant Division Engineer for Penn Station). The Court must construe the evidence "in the light most favorable to the party opposing summary judgment" and therefore accepts Plaintiff's version of the facts as true for the purposes of this opinion. *Guan*, 37 F.4th at 804.

evidence permitting the inference that Amtrak actually stopped the 8BW Escalator prior to her accident.[18]  Absent such evidence, finding that Amtrak turned off the escalator would be speculative. Plaintiff points to one possible explanation for the escalator's failure among many—she has presented no evidence that allows for the reasonable conclusion that it was more likely that her method, rather than any other, resulted in the incident.  Therefore, Plaintiff's argument is based on speculation, and there is no triable issue of fact as to whether Amtrak created the purportedly dangerous conditions that resulted in Plaintiff's fall.

Plaintiff cannot hold Amtrak liable for a breach of a duty because no triable issue of fact exists as to whether Amtrak had actual or constructive notice of dangerous conditions resulting in her accident or whether Amtrak created such conditions.  Accordingly, Amtrak is entitled to summary judgment on Plaintiff's negligence claim.[19]

---

[18] By way of comparison, some courts have found a triable issue of fact where there was tangible, specific evidence indicating that the defendant had taken actions prior the plaintiff's accident to create the dangerous condition that caused the accident.  *See, e.g.*, *Castro v. Target Corp.*, No. 14-CV-526 WFK LB, 2015 WL 1476863, at *3 (E.D.N.Y. Mar. 31, 2015) (noting evidence that, just 10 to 15 minutes before the accident, defendant employee had been restocking the shelves in the aisle in which plaintiff slipped on supplies on the floor, and a box of unidentified goods lay near the plaintiff shortly after the accident); *Panagatos v. Petsmart, Inc.*, No. 18-cv-5032 (SJF) (AKT), 2020 WL 7343409, at *5 (E.D.N.Y. Dec. 14, 2020) (finding no triable issue where there was "no evidence that anyone mopped the floor that day at any time prior to Plaintiff's accident").  Plaintiff identifies no such evidence here.

[19] Plaintiff also argues that the 8BW Escalator violated the New York City Building Code (the "Building Code") and that this is evidence of a breach of Amtrak's duty of care.  *See* Opp. at 7–10; *see also* Motion at 9–11.  The Court does not need to resolve this issue, as Plaintiff's negligence claim fails on other grounds.  However, this argument also fails on the merits.  Violation of a local ordinance such as the Building Code can be evidence of negligence.  *Elliott*, 95 N.Y.2d at 734.  But here, no evidence indicates that Amtrak was in violation of the Building Code.

First, accepting for these purposes that the Building Code adopts the national industry standard ASME A17.1-2000 Safety Code for Elevators and Escalators, with the A17.1a-2000 and A17.1b-2000 Addenda (together, the "ASME Safety Code"), the evidence presented by Plaintiff does not show that the 8BW Escalator was in violation of the ASME Safety Code.  Section 8.6.10.5 establishes guidelines for what actions to take if and when issues are identified with an escalator.  It does not provide that a stationary escalator must be barricaded.  Instead, it provides that an escalator in 24-hour operation should be checked daily for an enumerated list of conditions (which does not include an escalator that has stopped running), and, if any such condition is found to be "unsatisfactory," then the unit must then be stopped and barricaded.  *See* Dkt. No. 123-6 (full text of Section 8.6.10.5).

Second, Plaintiff argues that ASME A17.1-2016/CSA-B44-16 "provided direction [to] Amtrak which they [*sic*] still failed to follow."  Opp. at 9.  Plaintiff acknowledges, however, that the NYC Building Code does not adopt this standard.  *Id.*

Third, Plaintiff argues that the 8BW Escalator was in violation of the 2014 NYC Building Code 1009.4.2, which requires stairs to have a maximum height of seven inches.  But the 8BW Escalator was an escalator, not a staircase, and Plaintiff fails to establish how the NYC Building Code's provisions governing staircases applies to escalators.  *See, e.g.*,

### B.    Res Ipsa Loquitur

There is no rational basis to conclude that Amtrak had exclusive control of the 8BW Escalator at the time of Plaintiff's accident.  As a result, the doctrine of *res ipsa loquitur* fails to salvage Plaintiff's negligence claim.

Under the doctrine of *res ipsa loquitur*, a plaintiff may show that a defendant was negligent if:

(1) the event [causing the plaintiff's injury] must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.

*Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 448 (2d Cir. 2023) (quoting *Morejon v. Rais Constr. Co.*, 7 N.Y.3d 203, 209 (2006)).

Here, no reasonable jury could find that Amtrak had exclusive control of the 8BW Escalator. "The exclusive control requirement . . . is that the evidence must afford a rational basis for concluding that the cause of the accident was probably such that the defendant would be responsible for any negligence connected with it.'" *Dermatossian v. N.Y.C. Transit Auth.*, 67 N.Y.2d 219, 227 (1986) (internal quotation marks and citation omitted).  "The requirement does not mean that the possibility of other causes must be altogether eliminated, but only that their likelihood must be so reduced that the greater probability lies at defendant's door." *Id.* (internal quotation marks and citation omitted); *see also Union Mut. Fire Ins. Co.*, 64 F.4th at 448 (noting "New York courts have in practice eliminated exclusive control as an absolute requirement, and permitted plaintiffs to show, sufficiently, that other possible controllers were not the negligent cause").

---

*Ramos*, 2010 WL 3911487, at *6 ("[T]here is no building code violation here because the New York City Building Code provisions [governing 'interior stairs'] do not apply to stationary escalators.").  Nor has Plaintiff identified evidence showing that the 8BW Escalator's steps were over seven inches tall.

The 8BW Escalator was accessible to third parties at the time of Plaintiff's accident, which means that the escalator was not within Amtrak's exclusive control. In *Ebanks*, the New York Court of Appeals held that the doctrine of *res ipsa loquitur* cannot apply to accidents that occur on heavily trafficked public escalators because such escalators are not within the exclusive control of the defendant. 70 N.Y.2d at 623 (noting the escalator was "located in a subway station used by approximately 10,000 persons weekly"). "Courts in this Circuit have invoked *Ebanks* in granting summary judgment to defendants in escalator accident cases in which the plaintiff sought to proceed under a theory of *res ipsa loquitur*." *Looney v. Macy's Inc.*, 588 F. Supp. 3d 328, 351 (E.D.N.Y. 2021); *accord Lenigan v. Syracuse Hancock Int'l Airport*, No. 5:10-cv-1420 GTS/DEP, 2013 WL 149461, at *9 (N.D.N.Y. Jan. 14, 2013). There is no triable issue of fact as to whether the 8BW Escalator, used by members of the public disembarking from trains arriving at Penn Station, *see* Pl. 56.1 Statement ¶ 2; Reynolds Dep. at 74:3–7, was in the exclusive control of Amtrak at the time of Plaintiff's accident. Accordingly, Plaintiff's negligence claim cannot be presented to the jury based on the doctrine of *res ipsa loquitur*.

There is also no triable issue of fact as to whether Plaintiff's accident was "of a kind [that] ordinarily does not occur in the absence of someone's negligence" or could not have happened due to Plaintiff's voluntary action or contribution. *Union Mut. Fire Ins. Co.*, 64 F.4th at 448 (*res ipsa loquitur* elements). Plaintiff testified that her foot caught on a step of a stationary escalator as she began to climb it, causing her to fall. Reynold Dep. 74:8–20. This could have been caused by Plaintiff's own mistake, given that "it is not uncommon for trips and falls to occur without negligence where there is a misstep or loss of balance . . . ." *Smith v. City of New York*, 936 N.Y.S.2d 178, 179 (1st Dep't 2012) (finding *res ipsa loquitur* was not applicable); *Anderson v. Skidmore Coll.*, 941 N.Y.S.2d 787, 790 (3d Dep't 2012) ("Nor can we agree with plaintiff that the doctrine of res ipsa

loquitur is applicable here, given the possibility that plaintiff's fall was caused by her own misstep.");

*Braithwaite v. Equitable Life Assur. Soc'y of the U.S.*, 648 N.Y.S.2d 628, 629–30 (2d Dep't 1996) (holding

that the doctrine of *res ipsa loquitur* did not apply in part "because the injured plaintiff himself could

have been solely responsible for his own injury when he 'mis-stepped' onto the escalator").  No

evidence suggests that Plaintiff's fall was of a kind that ordinarily does not occur but for someone's

negligence, or that it could not have been caused by her voluntary action.

###### C.    Negligent Hiring and Supervision

The absence of a triable issue of fact that would permit Plaintiff's negligence claim to

proceed to trial also dooms her negligent hiring and supervision claim.  To prevail on a claim of

negligent hiring and supervision, a plaintiff must establish "the standard elements of negligence,"

and "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that

the employer knew or should have known of the employee's propensity for the conduct which

caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the

employer's premises or with the employer's chattels."  *Ehrens v. Lutheran Church*, 385 F.3d 232, 235

(2d Cir. 2004) (internal quotation marks and citations omitted).

Plaintiff's negligent hiring and supervision claim fails because Plaintiff has failed to show

sufficient evidence to allow a reasonable jury to find that the elements of her negligence claims were

established.  Accordingly, Amtrak is entitled to summary judgment as to Plaintiff's negligent hiring

and supervision claim.[20]

---

[20] Plaintiff's negligent hiring and supervision claim also fails given the absence of evidence permitting a reasonable jury
to conclude that any Amtrak employee had a propensity for conduct that caused Plaintiff's injury.  Plaintiff asserts that
the failure to barricade the 8BW Escalator leading up to her accident is evidence of Amtrak's negligent hiring and
supervision.  Opp. at 25.  Even assuming that the failure to barricade the 8BW Escalator caused Plaintiff's injury, a single
occurrence does not establish a propensity for conduct.  Indeed, as Plaintiff acknowledges, Amtrak's employees testified
that Amtrak's general policy is to barricade an escalator that is not running.  *Id.* at 24–25.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.  Dkt.

No. 116.  Plaintiff's claims are dismissed with prejudice.

The Clerk of the Court is directed to terminate all pending motions, to enter judgment for

Defendant Amtrak, and to close this case.

SO ORDERED.

Dated:  September 26, 2024
New York, New York

_____
GREGORY H. WOODS
United States District Judge

24